**SO ORDERED.**

**SIGNED this 17 day of August, 2011.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

DIANA MARIA GREGORY,                                          CASE NO. 10-09739-8-JRL

    DEBTOR.                                                                  CHAPTER 7

### ORDER

This matter came before the court on the Bankruptcy Administrator's motion to dismiss pursuant to 11 U.S.C. §§ 707(b)(1), and (3). A hearing was held on June 21, 2011 in Raleigh, North Carolina.

### PROCEDURAL HISTORY

Diana Maria Gregory ("debtor") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on November 24, 2010. The Bankruptcy Administrator reviewed the petition and determined that the case should be presumed to be an abuse under section 707(b) and subsequently filed a motion to dismiss the case on February 2, 2011. After reviewing the debtor's response and receiving additional information from the debtor, the Bankruptcy Administrator filed an amended motion to dismiss on June 20, 2011. The Bankruptcy Administrator contends that the debtor miscalculated her "means test" by improperly deducting

multiple expenses on Form B22A. However, at the hearing, the debtor submitted an amended Form B22A which only included two deductions to which the Bankruptcy Administrator objects.

## JURISDICTION

This court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. The requested dismissal of a case is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). As such, this court has jurisdiction to enter final orders and judgments in this matter. 28 U.S.C. § 157(b)(1).

## BACKGROUND

The debtor is a married woman whose spouse did not join her in seeking bankruptcy relief. At the time of filing, the debtor's schedules indicate that she had unsecured consumer debts totaling $59,912. These unsecured debts include roughly $8,000 in student loans, while the remainder is divided among sixteen different credit cards which are in the debtor's name individually. The debtor is in real estate sales, and due to the current economic conditions has experienced a decline in income leaving her unable to make the necessary payments on her debts. On the date of petition, the debtor's average monthly income for the preceding six months was $3,943.72 and her spouse's was $9,155.00.

The debtor owns two homes in Holy Springs, North Carolina, by tenancy by the entirety with her spouse. One of the homes is a former residence of the debtor and her spouse which has been on the market since July 2009 and is unencumbered by a mortgage. The other home is the

current residence of the debtor and her spouse which is encumbered by a deed of trust securing a $237,800.00 note solely in the spouse's name. Both properties were claimed as exempt pursuant to 11 U.S.C. § 522 and the laws of North Carolina pertaining to property held as tenants by the entirety. See In re Chandler, 148 B.R. 13 (Bankr. E.D.N.C. 1992). At the time of filing, the debtor indicated on her schedules that she had a household size of six.[1]

The debtor's amended Form B22A shows total monthly income of $13,098.72 and a marital deduction of $6,492.00, leaving the debtor with current monthly income of $6,606.72. The debtor then deducted $6,784.80 under § 707(b)(2) leaving monthly disposable income of negative $178.08. The Bankruptcy Administrator does not object to the $6,784.80 deduction under § 707(b)(2). The marital adjustment taken on Line 17 of Form B22A included a $166.00 deduction for student loans and a $1,628.00 deduction related to the former residence. The Bankruptcy Administrator objects to these two deductions as being improper and contends that $1,794.00 of the marital adjustment should be treated as monthly disposable income, thus raising a presumption of abuse under § 707(b)(2).

## DISCUSSION

This court is no stranger to the means test that was implemented by BAPCPA in 2005, which is complicated in both interpretation and application. See, e.g., In re Thelen, 431 B.R. 601, 604 (Bankr. E.D.N.C. 2010); Musselman v. eCast Settlement Corp., 394 B.R. 801 (Bankr. E.D.N.C. 2008). "The purpose of Form B22A is to determine whether a presumption of abuse

---

[1] Since filing, the debtor's oldest daughter has moved out of the primary residence and into the former residence. However, "[f]or purposes of a motion to dismiss a Chapter 7 case based on Section 707(b)(2), the relevant date on which calculations should be based is the date of the filing of the petition." In re Sale, 397 B.R. 281, 289 (Bankr. M.D.N.C. 2007).

arises under § 707(b)(2). The Official Form shows the debtor's calculations as required by § 707(b)(2)(A), commonly referred to as the 'means test.' According to § 707(b)(2), if a debtor's means test shows an ability to repay some portion of his debts, then there is a presumption of abuse, and, absent special circumstances, the case must either be converted to chapter 13 or dismissed."[2] In re Gilligan, 2007 Bankr. LEXIS 4706, *2-3 (Bankr. E.D.N.C. Jan. 24, 2007). A presumption of abuse exists if the debtor's disposable monthly income over a five-year period exceeds the lesser of (1) one-quarter of the debtor's nonpriority unsecured debt or $7,025, whichever is greater; or (2) $11,725. See 11 U.S.C. § 707(b)(2)(A)($i$)(I-II).

In the present case, one-quarter of the debtor's nonpriority unsecured debt is $14,978, so a presumption of abuse will arise if the debtor's total disposable income over five years exceeds $11,725 or $195.41 per month. The debtor reported a disposable income of negative $178.08 on her amended Form B22A. Therefore, the debtor's monthly disposable income would have to be adjusted upwards by $373.49 in order for the presumption of abuse to arise.

The starting point for the means test is the debtor's "current monthly income" as defined in § 101(10A). Current monthly income is defined as the "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income." 11 U.S.C. § 101(10A)(A). Income is further defined to include "any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent)."

---

[2] If the combined currently monthly income of the debtor and the debtor's spouse is less than the median family income of the applicable state, then a "means test" calculation is not required. See 11 U.S.C. § 707(b)(7). In this case, the debtor and her non-filing spouse's annualized income of $157,184.64, is well above North Carolina's median family income of $81,487 for a household of six.

11 U.S.C. § 101(10A)(B).  Therefore, a non-filing spouse's income must be included in "current monthly income" to the extent that he or she contributes to the household expenses; and the portion of a spouse's income not expended regularly to pay household expenses is deducted from current monthly income as a "marital adjustment."  See In re Hammock, 436 B.R. 343, 349 (Bankr. E.D.N.C. 2010); In re Sale, 397 B.R. 281, 286-87 (Bankr. M.D.N.C. 2007); In re Quarterman, 342 B.R. 647, 650-51 (Bankr. M.D. Fla. 2006).  However, the Bankruptcy Code does not define "household expenses" and the "determination of the amount paid by a non-filing spouse on a regular basis for household expenses of the debtor or the debtor's dependents is necessarily fact specific and subject to interpretation."  In re Travis, 353 B.R. 520, 526 (Bankr. E.D. Mich. 2006).  "[B]ecause of the impact of the Line 17 marital adjustment calculation on a debtor's ability to remain in bankruptcy, courts have an obligation to scrutinize challenges to line 17 very carefully."  Id. at 526.  The controlling issue in this case is whether the money that the non-filing spouse spends on a regular basis for the upkeep of the former residence is considered a "household expense" of the debtor.[3]

      At the hearing, the Bankruptcy Administrator argued that the term "household expenses of the debtor or the debtor's dependents" should be interpreted to include all expenses that are for the benefit of the debtor or one of the debtor's dependents.  The Bankruptcy Administrator's main argument is that once the former residence is sold the debtor will be entitled to half of the proceeds; and since the non-filing spouse is spending money on expenses and renovations to either maintain or elevate the value of the former residence, such payments are directly benefitting the debtor.  However, the debtor contends that the Code does not say payments made

---

[3] Since the exclusion of the student loan payment from the marital adjustment will not raise a presumption of abuse in this case, the court declines to address this payment in this opinion.

5

"for the benefit of" the debtor or the debtor's dependents, but rather payments for the "household expenses of" the debtor or the debtor's dependents. The debtor believes that "household expenses" should be narrowly construed as to only apply to expenses of the debtor's primary residence.[4] The debtor further contends that the Bankruptcy Administrator's issue with the treatment of the former residence should not be a means test related one, but rather one of exemptions, which is governed by the laws of North Carolina. The court finds the debtor's argument more persuasive.

"Our interpretation of the Bankruptcy Code starts where all such inquiries must begin: with the language of the statute itself." Ransom v. FIA Card Servs., N.A., 131 S. Ct. 716, 723 (2011) (internal quotations omitted). "[W]hen the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004). The court has examined section 707(b) and agrees that the words "for the benefit of" are not found anywhere. However, this does not answer the question of whether the $1,628.00 payment related to the renovation and upkeep of the debtor's former residence fits with in the meaning of a "household expense." When a word is not defined, a court should apply its ordinary meaning. Smith v. U.S., 508 U.S. 223, (1993) ("When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning."); see also Perrin v. U.S., 444 U.S. 37, 42 (1979)

---

[4] The court acknowledges that there are two conflicting lines of cases when a debtor's non-filing spouse is the only one liable on the mortgage. One line has adopted a payment "for the benefit of" the debtor approach. See In re Strum, 2011 Bankr. LEXIS 1530 (Bankr. N.D. Ohio Jan. 7, 2011), rev'd and remanded, Sturm v. United States Tr., 2011 U.S. Dist. LEXIS 78091 (N.D. Ohio July 14, 2011); In re Rable, 445 B.R. 826 (Bankr. N.D. Ohio 2011). The other line of cases concentrates solely on who is contractually liable for the mortgage payment. See Sturm (N.D. Ohio July 14, 2011); In re Shahan, 367 B.R. 732, 738 (Bankr. D. Kan. 2007); In re Clemons, 2009 Bankr. LEXIS 1959 (Bankr. D. Ill. 2009). Were the court to find this the determinative distinction, it is unclear how it would apply here because the former residence is unencumbered by a mortgage, and it is unclear whether the debtor is jointly liable for any of the expenses related to the former residence.

("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."). A household is defined as "[t]hose who dwell under the same roof and compose a family." Black's Law Dictionary (9th ed. 2009), see also Merriam-Webster's Collegiate Dictionary (11th ed. 2003). The ordinary, contemporary, and common meaning of "household" only includes one's primary residence and those who live within that household. Here, the expenses related to the former residence are not attributable to any expenses related to the debtor's primary residence. If the non-filing spouse were to stop making the $1,628.00 payment related to the former residence, it would not affect the day-to-day functioning of the debtor's household. The statute could have been written more broadly to capture as income any payment by a non-debtor made for the benefit of the debtor, but the actual language is more narrow.

Based on the foregoing, the Bankruptcy Administrator's motion to dismiss is **DENIED**.

**END OF DOCUMENT**