IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:11-CV-580-BO

| | | |
|---|---|---|
| BANKRUPTCY ADMINISTRATOR, | ) | |
|     Appellant, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| DIANA MARIA GREGORY, | ) | |
|     Appellee. | ) | |

This matter is before the Court on the Bankruptcy Administrator's appeal from the bankruptcy court's August 17, 2011 denial of her motion to dismiss pursuant to 11 U.S.C. § 707(b)(1) and (b)(3). Because the bankruptcy court's factual findings are not clearly erroneous, and because the bankruptcy court properly conducted the presumption of abuse analysis in section 707(b)(2) and the totality of the circumstances analysis in section 707(b)(3), the bankruptcy court acted within its discretion in denying the Bankruptcy Administrator's motion to dismiss and its judgment is AFFIRMED.

## BACKGROUND

Diana Maria Gregory filed a voluntary petition under Chapter 7 of the Bankruptcy Code on November 24, 2010. At the time of filing the petition, Ms. Gregory was married and living with her husband and four daughters (ages 7 to 21). She scheduled $59,152.35 of unsecured debts on Schedule F, including $8,000.00 of non-dischargeable student loans. All of her unsecured debts were hers alone. Her only secured debt was the mortgage on her current residence of

$237,800.00, which was a joint debt of Ms. Gregory and her husband, upon which the monthly payment was $1,482.00. Ms. Gregory's current monthly income for the six months prior to the filing of bankruptcy was $3,943.72, which represents $4,549.67 in gross income, reduced by employee business expenses in the amount of $605.95. Her husband's gross income for that period was $9,155.00. On her Amended Form B22A, Ms. Gregory reported current monthly income for purposes of section 707(b)(2)(A) in the amount of $6,606.72. She then deducted the "marital adjustment" at Line 17 in the amount of $6,784.80 for her husband's payment of certain student loans ($166.00) and for expenditures related to the couple's former residence. Her monthly disposable income was then calculated to be negative $178.08. Ms. Gregory also owned a former residence in tenancy by the entirety with her husband, the value of which she represented as $260,000.00. Relevant to this appeal, on February 2, 2011, the Bankruptcy Administrator filed a motion to dismiss the case. The bankruptcy court held a hearing on the motion and on Ms. Gregory's response on June 21, 2011. The bankruptcy court entered its order on August 17, 2011, denying the Bankruptcy Administrator's amended motion to dismiss. On September 19, 2011, the Bankruptcy Administrator timely filed its notice of appeal to this Court.

The Bankruptcy Administrator argues that the Bankruptcy Judge erred (1) in concluding that payments made by a non-filing spouse on a regular basis for the upkeep, maintenance, and improvement of joint property do not constitute a "household expense" of the debtor pursuant to 11 U.S.C. § 101(10A)(B) and (2) in finding that the totality of the debtor's circumstances did not constitute an abuse pursuant to 11 U.S.C. § 707(b)(3).

## JURISDICTION AND STANDARD OF REVIEW

Jurisdiction over this appeal is proper pursuant to 28 U.S.C. § 158(a), which provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals...from final

judgments, orders, and decrees...of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." A bankruptcy court's findings of fact shall not be set aside unless clearly erroneous and conclusions of law are reviewed *de novo*. *In re White*, 487 F.3d 199, 204 (4th Cir. 2007). A bankruptcy court's definition of the statutory term "household expense" is a conclusion of law, which is reviewed *de novo*. The totality of the circumstances test used to determine whether discharging a debtor's debt would constitute abuse is reviewed for abuse of discretion. *Cf. Hebbring v. U.S. Trustee*, 463 F.3d 902, 907-08 (9th Cir. 2006).

## DISCUSSION

The Bankruptcy Administrator raises two issues on appeal relating to Ms. Gregory's husband's payments for repairs on their former residence. First, she contends that the bankruptcy court should have included the payments within Ms. Gregory's current monthly income under section 707(b)(2). Second, she argues that, even if inclusion of these payments would have been improper in establishing a presumption of abuse, the payments should have been considered within the bankruptcy court's totality of the circumstances analysis under section 707(b)(3).

### Chapter 7 Abuse

In determining whether providing chapter 7 relief to a debtor constitutes abuse under 11 U.S.C. § 707(b)(3), bankruptcy courts apply a "means test" to the debtor's financial situation, to screen a debtor's income and expenses to determine whether the debtor is able to repay her debt. *See* 11 U.S.C. § 707(b)(1), (2). If the debtor's income exceeds the "highest median family income of the applicable State for a family of the same number or fewer individuals," the means test creates a rebuttable presumption of abuse. 11 U.S.C. § 707(b)(2), (6), (7).

The means test evaluates the debtor's monthly expenses such as health insurance, housing,

utilities, taxes, and an allowance for food and clothing. 11 U.S.C. § 707(b)(2)(A). The debtor's monthly disposable income is then determined by subtracting these allowable expenses from his monthly income. If that monthly disposable income is greater than a benchmark figure provided in the statute, then a presumption of abuse arises. This presumption is rebuttable if the debtor can demonstrate special circumstances, as provided in 11 U.S.C. § 707(b)(2)(B)(I).

As described by the Court of Appeals for the Fourth Circuit,

> Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") and amended Section 707(b) of the Bankruptcy Code with the intent of relaxing the standard for dismissing a petition brought under Chapter 7 and characterized as abusive. H.R.Rep. No. 109-31(I), at 7-8 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 98-99. Specifically, the standard for dismissal under section 707(b) was changed from "substantial abuse" to simply "abuse." 11 U.S.C. § 707(b)(1). The amendment also eliminated a presumption in favor of granting a debtor's discharge. As amended by the BAPCPA, § 707(b) permits the court's dismissal of "a case filed by an individual debtor under this chapter whose debts are primarily consumer debts...if it finds that the granting of relief would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1).

*Calhoun v. U.S. Trustee*, 650 F.3d 338, 340 (4th Cir. 2011). If the presumption of abuse does not arise or is rebutted, the court must then determine whether granting a debtor relief would be an abuse of the provisions of Chapter 7 by considering "whether the debtor filed his petition in bad faith" and/or by considering "the totality of the circumstances...of the debtor's financial situation." 11 U.S.C. § 707(b)(3).

Here, the bankruptcy court concluded that Ms. Gregory's expenses, when subtracted from her income, left a monthly net income that was insufficient to trigger a presumption of abuse under § 707(b)(2). The bankruptcy court further concluded that granting relief to Ms. Gregory would not be an abuse of the provisions of Chapter 7 by considering "the totality of the circumstances...of the debtor's financial situation." 11 U.S.C. § 707(b)(3).

### A. The bankruptcy court properly declined to consider Ms. Gregory's non-filing husband's payments under section 707(b)(2) in its presumption of abuse analysis.

This Court agrees that Ms. Gregory's husband's payments were properly excluded from the section 707(b)(2) presumption of abuse analysis because they do not constitute "household expenses." In enacting the BAPCPA, Congress included within the debtor's current monthly income "any amount paid by any entity other than the debtor...on a regular basis for the household expenses of the debtor or the debtor's dependents..." 11 U.S.C. § 101(10A)(B). In other words, Ms. Gregory's non-filing spouse's payments for repairs to the second residence are relevant to the application of the section 707(b)(2) means test to the extent that they are made on a regular basis for household expenses. The term "household expense" is not defined within the Bankruptcy Code.

On June 21, 2011, Ms. Gregory testified at the hearing on the motion to dismiss that the payments went to new carpeting, to repainting the entire house, to landscaping, to insurance, and to combatting rot. In evaluating the expenses, the bankruptcy court cited to Black's Law Dictionary and Merriam-Webster's College Dictionary to hold that "[t]he ordinary, contemporary, and common meaning of 'household' only includes one's primary residence and those who live within that household. Here, the expenses related to the former residence are not attributable to any expenses related to the debtor's primary residence. If the non-filing spouse were to stop making the $1,628.00 payment related to the former residence, it would not affect the day-to-day functioning of the debtor's household. The statute could have been written more broadly to capture as income any payment made by a non-debtor for the benefit of the debtor, but the actual language is more narrow" [DE 1-1 at 7].[1]

---

[1] Even if the statute were written more broadly, the bankruptcy court could not automatically conclude that these payments would accrue to the benefit of Ms. Gregory. As noted by the Western District of Michigan, given changing attitudes toward marriage and financial independence, "one can no longer simply accept as fact that a married couple will pool

The Bankruptcy Administrator argues that Ms. Gregory's husband's payments to renovate the property are household expenses paid for the benefit of the debtor and should not be taken as a marital adjustment. If these expenses were not deducted, an additional $1,628.00 in funds should have been considered as monthly disposable income under the means test, resulting in monthly disposable income sufficient to trigger the presumption of abuse within 11 U.S.C. § 707(b)(2).

Ms. Gregory cites to the Fourth Circuit's opinion in *In re McGreevy*, in which the court defined a similar term, "household goods," as "those items of personal property that are typically found in or around the home and used by the debtor or his dependents to support and facilitate day-to-day living within the home, including maintenance and upkeep of the home itself." 955 F.2d 957, 961-62 (4th Cir. 1992). By analogy, she argues that the expenditures made by her husband on their former residence during the six months prior to filing for bankruptcy were "for purposes of making the house more 'sellable'," and did not enhance the day-to-day living of the household. Lacking a "functional nexus" to the household, Ms. Gregory concludes that her husband's expenses were not *household* expenses, and were properly excluded from the bankruptcy court's section 707(b)(2) presumption of abuse analysis.

This Court perceives, on *de novo* review, that Ms. Gregory has the better of the argument. The expenses to which she testified at the hearing were directed toward the goal of selling the former residence–consistent with Ms. Gregory's theory that her husband's payments were in the nature of investments and did not have a meaningful nexus to Ms. Gregory's household

---

all income and expenses like a quasi-partnership...[a]t best, a court today can only presume that a married couple pools income and/or shares expenses...[e]ach debtor must be given the opportunity to establish that his or her household is managed differently." *In re Welch*, 347 B.R. 247, 254 (Bankr. W.D. Mich. 2006).

expenses. Further, the bankruptcy court correctly noted that the household expenses analysis does not "capture as income any payment made by a non-debtor for the benefit of the debtor." Given the narrow statutory definition and the lack of a factual nexus between these payments and the day-to-day functioning of her household, the bankruptcy court's analysis on this issue is affirmed.

### B. The bankruptcy court properly declined to consider Ms. Gregory's non-filing husband's payments under section 707(b)(3) in its totality of the circumstances analysis.

If the presumption of abuse does not arise or is rebutted, the court must then determine whether granting a debtor relief would be an abuse of the provisions of Chapter 7 by considering "whether the debtor filed his petition in bad faith" and/or by considering "the totality of the circumstances...of the debtor's financial situation." 11 U.S.C. § 707(b)(3). Prior to enactment of the BAPCPA, this circuit considered the "totality of the circumstances" test to encompass five factors: (1) whether the bankruptcy petition was filed because of sudden illness, calamity, disability or unemployment; (2) whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay; (3) whether the debtor's proposed family budget is excessive or unreasonable; (4) whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and (5) whether the petition was filed in good faith. *Green v. Staples*, 934 F.2d 568, 572 (4th Cir. 1991). After BAPCPA, Form B22A implements the section 707(b)(2)(A) ability to repay test, leaving unresolved whether that test, and the *Green* factors, have continued vitality in the section 707(b)(3) totality of the circumstances analysis. However, the Fourth Circuit acknowledged the bankruptcy court's analysis of the *Green* factors in *Calhoun v. U.S. Trustee*, without making "a determination as to the enduring applicability of the holding in *Green*." *Calhoun*, 650 F.3d at

342. In light of that language, this Court views the *Green* factors as instructive guidance in evaluating the totality of Ms. Gregory's financial circumstances.

The Bankruptcy Administrator argues that sale of the former residence will result in sufficient liquid assets to pay all creditors in full, as it is an unencumbered asset valued at $260,000.00 and Ms. Gregory's total debt liability is $59,912.00. She cites to the Fourth Circuit's affirmance of the bankruptcy court in *Calhoun v. U.S. Trustee* on the grounds that the totality of the circumstances of the Calhouns' financial situation rendered discharge of the their debt an abuse of the provisions of Chapter 7, despite the fact that no presumption of abuse arose. However, in *Calhoun*, the Fourth Circuit considered a multitude of factual findings, none of which are present in the instant case. For example, the Calhouns had made almost two years of payments to unsecured creditors, their monthly expenses "border[ed] on the extravagant," and they failed to justify their excessive expenses. *Calhoun*, 650 F.3d at 342. Moreover, the Gregorys' property held in tenancy by the entirety is exempt property under 11 U.S.C. § 522. In affirming the bankruptcy court in the Calhouns' case, the Fourth Circuit expressly noted that the exempt assets–there, social security benefits–were not required to support the finding of abuse. *Id.* at 342-43. Absent any indication that these additional factors are present in the case before the Court, this Court finds no abuse of discretion in the bankruptcy court's refusal to dismiss under section 707(b)(3).

## CONCLUSION

In sum, the bankruptcy court's factual findings are not clearly erroneous. Moreover, the bankruptcy court correctly conducted the presumption of abuse analysis in section 707(b)(2) and the totality of the circumstances analysis in section 707(b)(3). Thus, the bankruptcy court acted

within its discretion in denying the Bankruptcy Administrator's motion to dismiss. Accordingly, the bankruptcy court's judgment is AFFIRMED.

SO ORDERED. This _26_ day of February, 2012.

*/s/ Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE